```
                IN THE UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF ARKANSAS
                         FAYETTEVILLE DIVISION
```

UNITED STATES OF AMERICA                           PLAINTIFF/RESPONDENT

V.                          Civil No. 09-5203
                            Criminal No. 08-50026-001

EDWIN G. ALVARADO                                       DEFENDANT/MOVANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On September 21, 2009, the defendant/movant Edwin G. Alvarado (hereinafter "the defendant") filed a 28 U.S.C. § 2255 motion. The defendant was appointed counsel and a hearing was conducted on the motion on February 10, 2010. A supplemental hearing was conducted on February 16, 2010. The matter is now ripe for consideration and the undersigned, being well and sufficiently advised, finds and recommends as follows:

**BACKGROUND**

1. On June 6, 2008, pursuant to a written plea agreement, the defendant pled guilty to conspiring to distribute methamphetamine, in violation of 18 U.S.C. §§ 841(a)(1) and 846, and distributing more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). (Doc. 104.) At his sentencing hearing on January 23, 2009, the district court granted the Government's motion for a five-level downward departure under U.S.S.G. 5K1.1, based on defendant's substantial assistance in the Government's investigation of the distribution of methamphetamine. The Court sentenced the defendant to 188 months imprisonment (the bottom of the Guideline range) and 5 years supervised released on

each count, with the terms to run concurrently; a $50,000 fine; and a $200 special assessment.  (Doc. 140.)  The defendant did not appeal his conviction or sentence.

   2.   In the motion now before the Court, the defendant argues that his retained attorney, Mr. Connie Brown Williams, was ineffective for:

   *   failing to argue for a sentence below the Sentencing Guideline range based on his cooperation with the Government;

   *   failing to argue for a departure from the Guideline range based on his status as a deportable alien; and

   *   failing to appeal his sentence, despite defendant's request that he do so.

   3.   The undersigned finds it unnecessary to address defendant's first two claims because, as set out below, the undersigned finds that defendant is entitled to relief on his claim regarding counsel's failure to appeal.  The defendant is, therefore, entitled to be re-sentenced, see <u>Barger v. United States</u>, 204 F.3d 1180, 1182 (8th Cir. 2000), and his claims regarding counsel's failure to raise certain arguments at his original sentencing hearing are moot.

   4.   At the February 10, 2010 hearing on his § 2255 motion, defendant testified, through a Spanish-speaking interpreter, that he does not speak fluent English.  The defendant testified that while he had seen the presentence report prior to his sentencing hearing, he was not expecting the 188 month sentence that he

received and he was very upset and felt like the "world fell on top" of him when his sentence was pronounced. The defendant explained that Mr. Williams had led him to believe that he would receive a sentence in the range of 57 months, and possibly even lower than 50 months, based on his significant cooperation with the Government.

The defendant testified that following his sentencing hearing, Mr. Williams came back to the courthouse holding-cell, but he did not bring the interpreter from the sentencing hearing – Ms. Anne Yancey – with him; the defendant, therefore, could not understand what Mr. Williams was saying. According to the defendant, Mr. Williams handed him some documents, and defendant's ex-girlfriend, who was also in the holding-cell, explained to the defendant, "that's if you want to appeal." Defendant testified that he told Mr. Williams, in Spanish, that he wanted to appeal. When asked whether his ex-girlfriend translated this to Mr. Williams, the defendant stated that he did not know, but that Williams advised him (by gesturing with his hand to his ear and mouth) to call his secretary, "Maritza."

The defendant explained that he accepted the appeal forms from Mr. Williams because he did, in fact, want to appeal. The defendant testified that he tried to complete the forms himself, but he did not understand how to do so, and he did not ask any other inmates for help in doing so because he did not want anyone to know of his cooperation with the Government.

The defendant testified that he was sentenced on Friday and that the following Monday, he called Mr. Williams' office from the jail and spoke with Maritza, who is fluent in Spanish. According to the defendant, Maritza asked him, "Is it true you're going to appeal," and defendant responded, "I think so" and that he felt like he had been deceived by Mr. Williams. Maritza then stated, "Let me talk to Connie," and she put the defendant on hold. The defendant testified that Maritza left him on hold for approximately 15 minutes, and the call was then disconnected, as his time was up on the jail phone. The defendant tried to call Mr. Williams' office back later that day, but no one answered. The defendant testified that he tried to call again another day, but the office machine picked up and the defendant could not leave a message because he was calling collect from the jail.

The defendant testified that he believed Mr. Williams had filed an appeal on his behalf and that his appeal was in progress, until he contacted Mr. Williams' office again and Maritza advised him that no appeal had been filed. According to the defendant, he was never able to speak to Mr. Williams directly, as he was always advised that Mr. Williams was out or in court. Defendant testified that his wife was able to reach Mr. Williams and was advised by him that the defendant did not have any basis for an appeal and that he would have to cooperate further to obtain a reduction in his sentence.

5. Mr. Williams testified that he never promised the defendant a certain sentence and that he explained the Sentencing Guideline range to the defendant before he pled guilty. Mr. Williams acknowledged that, in the beginning stages of the case, he could have advised the defendant of a lower sentence in the range of 9 to 10 years, but that was before he became aware of the extent of defendant's involvement in the alleged conspiracy and of the amount of drugs involved. Mr. Williams explained that he told the defendant, as he does all criminal defendants, that his sentence depended upon what he could offer the Government, and that he had seen defendants who offered valuable information receive sentences less than half of what they would have otherwise received, or even receive probation.

Mr. Williams testified that the defendant was distraught when his sentence was pronounced and began crying. According to Mr. Williams, immediately after the sentencing hearing, he went back to the holding-cell, accompanied by Ms. Yancey, the interpreter, to talk to the defendant about an appeal or a motion to reduce his sentence pursuant to Federal Rule of Criminal Procedure 35(b)[1]. Mr. Williams denied providing the defendant with appeal forms and denied that the defendant directed him to file an appeal. Mr. Williams testified that he did advise the defendant of his right to appeal and the time limit for doing so, but he did not consult

---

[1] This rule authorizes the Court to reduce a sentence if the Government files a motion demonstrating that the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.

with the defendant about the pros and cons of filing an appeal. Mr. Williams could not say that he specifically asked the defendant if he did, in fact, want to appeal; nor could he say that the defendant was actually paying attention when he advised the defendant of his appeal rights, as the defendant was very distraught and kept walking away.

Mr. Williams testified that he did not feel he had any further responsibility to the defendant other than to advise him of his appeal rights. Mr. Williams did not know if the defendant subsequently attempted to contact his office about appealing, but recalled that defendant's family did so approximately one month after defendant was sentenced, at which time, Mr. Williams advised them the time to appeal had elapsed.

When asked whether, given how distraught the defendant was about his sentence, it would be reasonable to assume that the defendant wanted to appeal, Mr. Williams responded, "I think so, yes." When asked why he did not contact the defendant following the sentencing hearing to make sure he understood his appeal rights and to inquire about whether he wanted to appeal, Mr. Williams explained that the defendant had acted "hostile" towards him in the holding-cell and he assumed the defendant "did not want anything to do with [him]." Mr. Williams testified that if the defendant had wanted to appeal, he expected the defendant to obtain the appeal forms "through the jail system," and expected that the defendant would file the notice of appeal himself or that

another attorney – either retained by the defendant or appointed by the Court – would do so for the defendant. Mr. Williams further testified that the retainer the defendant paid him only covered the trial phase of defendant's case and did not include an appeal, but that, had the defendant instructed him to appeal, he would have filed a notice of appeal on defendant's behalf and asked the defendant whether he wanted Mr. Williams to notify the Court that he was indigent.

In its response to the defendant's § 2255 motion, the Government stated that it had contacted Mr. Williams to inquire about defendant's assertion that he had requested Mr. Williams to file an appeal, but "the [G]overnment ha[d] not received a clear answer from counsel on this issue." (Doc. 153, footnote at pg. 6.) When the undersigned inquired about this, Mr. Williams explained that he had advised the Government that he would have to review the plea agreement, because he was not sure whether or not the defendant had the right to appeal, as most plea agreements contain a waiver of such right. According to Government counsel, Mr. Williams stated that he thought the defendant had waived his right to appeal and that he would have to review his file and get back with Government counsel. Mr. Williams testified that after reviewing the plea agreement and refreshing his memory, he recalled the events testified to above.

6. The Court conducted a supplemental hearing on February 16, 2010, to elicit testimony from Ms. Yancey regarding the

dispute in testimony as to whether she was present to interpret the conversation between the defendant and Mr. Williams in the holding-cell after the sentencing hearing. Ms. Yancey could not recall what occurred after the sentencing hearing.

7. At the supplemental hearing, the Government conceded that the defendant should be granted § 2255 relief so that he could pursue an appeal of his sentence. The Government acknowledged that, even if Mr. Williams' version of events were true, the defendant was upset about his sentence and Mr. Williams did not properly consult with him about whether he wanted to appeal.

**DISCUSSION**

8. Ineffective assistance of counsel claims generally require a defendant to show that his counsel's performance "fell below an objective standard of reasonableness" and that he was prejudiced by this deficiency. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). However, an attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling a defendant to § 2255 relief, and no inquiry into prejudice or likely success on appeal is necessary. See Watson v. United States, 493 F.3d 960, 963-64 (8th Cir. 2007). For a defendant to succeed on such a claim, he must show that he made his desire to appeal evident to his attorney. See Yodprasit v. United States, 294 F.3d 966, 969 (8th Cir. 2002). "A bare assertion by the [defendant] that he made a

request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." Barger, 204 F.3d at 1182. A court is required to conduct an evidentiary hearing before making such factual determinations. See Watson, 493 F.3d at 964.

9. Where a defendant has not specifically requested an appeal, the reasonableness of counsel's conduct is judged by whether counsel had a duty to consult the defendant about the possibility of an appeal. This duty is triggered where there is reason to believe that a rational defendant would want to appeal or where the client has reasonably demonstrated an interest in appealing. See Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). The Supreme Court in Roe observed, "We expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." Id. at 481. To show prejudice, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. Id. at 484.

10. According to the defendant, there was no interpreter present in the holding-cell when he told Mr. Williams, in Spanish, that he wanted to appeal and he was never able to reach Mr. Williams, only his secretary, about the matter when he attempted to contact his office. Even if defendant's version of events is

true, the undersigned cannot say that defendant made his desire to appeal evident to Mr. Williams. Indeed, under defendant's version of events, it appears that he never really had the opportunity to express his desire to appeal to Mr. Williams.

11. What this case turns on then is whether Mr. Williams had a duty to consult with defendant about the possibility of an appeal and whether he fulfilled that duty. As conceded by the Government, even under Mr. Williams' version of events, this issue must be decided in defendant's favor. Mr. Williams acknowledged that, given how upset defendant was about his sentence, it would be reasonable to assume that the defendant wanted to appeal. Thus, the duty to consult with the defendant about an appeal was triggered. Mr. Williams acknowledged that he never discussed with the defendant the pros and cons of appealing so as to allow the defendant to make an informed decision about the matter. Even if Mr. Williams, as he testified, advised the defendant of his right to appeal and the time limit for doing so, Mr. Williams acknowledged that he did not know if the defendant took this advice in, as he was very distraught and kept walking away from Mr. Williams. Despite this fact, Mr. Williams made no attempt to contact the defendant after he had calmed down to make sure that he understood his appeal rights and to consult with him about an appeal.

The undersigned is dismayed by Mr. Williams' testimony that he felt he had no further responsibility to the defendant and that

he expected the defendant, if he wanted to appeal, to somehow obtain the appeal forms on his own and to file a notice of appeal himself or have another attorney do so for him. The undersigned notes that had Mr. Williams properly consulted with the defendant and been advised to appeal, he would have been obligated to pursue the appeal on defendant's behalf, regardless of whether the retainer he was paid covered the appeal. See Eighth Circuit Rule 27C (a criminal defendant's trial counsel, whether retained or appointed, must file a notice of appeal upon their client's request and trial counsel "shall represent the defendant on appeal, unless the Court of Appeals grants permission to withdraw").

12. Having found that Mr. Williams had a duty to consult with the defendant about an appeal and that he did not fulfill that duty, the undersigned must next address whether the defendant was prejudiced. Given the undisputed testimony that the defendant was very upset, even crying, about the sentence he received, the undersigned has no doubt that the defendant would have appealed had he had the opportunity to consult with Mr. Williams about the matter. The defendant has, therefore, demonstrated prejudice as required by the standard set forth in Roe, 528 U.S. at 484.

**CONCLUSION**

13. Based on the foregoing, the undersigned concludes that the defendant is entitled to relief on his claim regarding Mr. Williams' failure to appeal. Accordingly, the defendant is

entitled to be re-sentenced. See Barger, 204 F.3d at 1182. As the defendant will be entitled to a new sentencing hearing – represented by his current appointed counsel – the undersigned finds it unnecessary to address defendant's other § 2255 claims regarding Mr. Williams' failure to raise certain arguments at defendant's original sentencing hearing.

14. The undersigned, therefore, recommends as follows:

* The defendant's § 2255 motion should be **GRANTED** with regard to his claim regarding counsel's failure to appeal.

* The defendant's sentence should be vacated and a new sentencing hearing should be scheduled. The time for the defendant to appeal will then run from that date.

* The defendant's remaining § 2255 claims should be **DISMISSED** as moot.

**The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 19th day of March, 2010.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE